Carl J. Marquardt, WSBA #23257
Law Office of Carl J. Marquardt, PLLC
1126 34th Ave., Suite 311
Seattle, WA 98122-5137
Telephone: 206-388-4498
e-mail: carl@cjmpllc.com

Charle C. Weller (*pro hac forthcoming*)
CHARLES C. WELLER APC
11412 Corley Court
San Diego, CA 92126
858.414.7465
legal@cweller.com

*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF WASHINGTON

STEVEN A. CABRERA, individually and
on behalf of those similarly situated,

                    *Plaintiff,*

v.

MARTIN & PLEASANCE NORTH
AMERICA, INC., *a Washington
corporation,*

                    *Defendant*.

No. 2:26-cv-991

**CLASS ACTION COMPLAINT
UNDER THE WASHINGTON
CONSUMER PROTECTION ACT,
RCW CHAPTER 19.86**

**JURY TRIAL DEMAND**

Steven A. Cabrera ("Plaintiff"), individually and on behalf of all others similarly situated nationwide, by and through undersigned counsel, hereby brings this action against Martin & Pleasance North America, Inc. ("MPNA" or "Defendant"), alleging that its Ener-C Sugar-Free Multivitamin Drink Mixes ("the Products"), which are manufactured, packaged, labeled, advertised, distributed, and sold by Defendant, are misbranded and falsely advertised because they claim to be "All Natural" while containing synthetic ingredients derived from petroleum substrates, and upon information and belief and investigation of counsel alleges as follows:

### PARTIES

1.    Plaintiff Steven A. Cabrera is and at all times relevant was a citizen of the state of Virginia, domiciled in Alexandria, Virginia.

2.     Defendant Martin & Pleasance North America is Washington corporation with its principal place of business in Blaine, Washington.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

4.     Plaintiff seeks to represent Class members who are citizens of states and countries different from the Defendant.

5.     The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

6.     In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

7.     In the alternative, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000, exclusive of interest and costs.

8.     This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in this district.

9.     Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over Defendant.

## FACTUAL ALLEGATIONS

10.     Across the globe, consumers are increasingly attuned to claims that foods are "all-natural," minimally processed, or otherwise free of artificial flavors and preservatives.

11.     For example, a 2018 survey by L.E.K. Consulting found that overwhelming numbers of consumers were committed or casual adherents to so-called "clean label" food

-2-
CLASS ACTION COMPLAINT

attributes: "No artificial ingredients" (69 percent); "No preservatives" (67 percent); or "All-natural" (66 percent). These were the three most attractive attributes in the consumer survey. Roughly 60 to 70 percent of consumers reported a willingness to pay a price premium for "clean label" foods. *See* https://www.lek.com/insights/ei/next-generation-mindful-food-consumption.

12.    This consumer preference has led to an explosion in the category of "clean label" foods and beverages. Leading analyst Allied Market Research estimated that the "natural foods and drinks" category would grow by an estimated compound annual growth rate of 11.4 percent from 2022 to 2031, reaching $361 billion in annual sales by 2023. *See* https://www.alliedmarketresearch.com/natural-food-and-drinks-market.

13.    On or about June 3, 2025, Mr. Cabrera purchased the Orange flavor Products from a Shoppers Food Warehouse store in Alexandria, Virginia. Mr. Cabrera attempts to avoid products that contain synthetic ingredients.

14.    Defendant formulates, manufactures, and sells fruit-flavored electrolyte-infused drink enhancers.

15.    The Products' front and side labels state explicitly that the Products are "All Natural," with these statements reinforced by depictions of natural fruits that provide the characterizing flavor:



CLASS ACTION COMPLAINT



16.     These statements are false and/or misleading. All of the Products contain an ingredient that is listed in the ingredients list as "DL malic acid."

17.     There is a naturally occurring form of malic acid called "L malic acid" that is derived from apples. But because L malic acid is expensive to use in mass quantities, the vast majority of food products use a synthetic form of malic acid called "DL malic acid." This type of malic acid is manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

18.     Federal regulations are explicit that that "DL-malic acid does not occur naturally. It is made commercially by hydration of fumaric acid or maleic acid." 21 C.F.R. § 184.1069.

19.     The use of synthetic malic acid in the Products has been confirmed by laboratory testing. When testing malic acid to determine whether it is artificial (DL) or natural (L) malic acid, the industry standard is to test for the presence of the "D isomer" of malic acid. This isomer is not present in any amount in L-malic acid. The presence of the D isomer of malic acid in any amount in a food or beverage indicates the use of artificial DL-malic acid instead of natural L-malic acid.

20.    Counsel for Plaintiff commissioned testing of the specific items that were purchased by Plaintiffs. That testing was conducted on or about August 21, 2025 by Krueger Food Laboratories, Inc. of Chelmsford, Massachusetts, a reputable independent food testing and analysis laboratory that has conducted testing for the food and beverage industry since 1984.

21.    This testing by Krueger Food Laboratories revealed that the D isomer was present in the Products purchased by Plaintiffs, in substantial amounts. This is the industry standard method for distinguishing the use of synthetic versus natural malic acid in a food product. This testing therefore establishes that the malic acid used in these Products is synthetic DL-malic acid, and not natural L-malic acid.

22.    Plaintiff reserves the right to amend this Complaint to add further products that contain similar label misrepresentations as testing and investigation continue.

23.    Labels are the chief means by which food product manufacturers convey critical information to consumers, and consumers have been conditioned to rely on the accuracy of the claims made on these labels.

24.    Consumers including Plaintiffs especially rely on label claims made by food product manufacturers such as Defendant, as they cannot confirm or disprove those claims simply by viewing or even consuming the Products.

25.    Further, federal law and corresponding state law and regulations both reflect and create reasonable consumer expectations concerning the contents of foods and beverages. That is, consumers have been conditioned to rely on statements such as "All Natural" when purchasing foods and dietary supplements.

26.    Plaintiff reviewed the front label on the Products prior to his purchase, as well as the other statements described herein, and reviewed the statements regarding naturalness made there. Consumers such as Plaintiff who viewed the Products' labels reasonably understood the Products to contain only natural ingredients. This representation was false.

27.    Consumers including Plaintiff reasonably relied on this front-label statement such that they would not have purchased the Products from Defendant if the truth about the Products

was known, or would have only been willing to pay a substantially reduced price for the Products had they known that Defendant's representations were false and misleading.

28.  In the alternative, because of its deceptive and false labelling statements, Defendant was enabled to charge a premium for the Products relative to key competitors' products, or relative to the average price charged in the marketplace.

29.  Plaintiff suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injury.

30.  Plaintiff seeks restitution for unjust enrichment in the alternative because he has no adequate remedy at law.

31.  A legal remedy is not adequate if it is not as certain as an equitable remedy. To obtain a full refund as damages, Plaintiff may be required to show that the Product he received has essentially no market value.  In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased products that he would not otherwise have purchased, but for Defendant's misrepresentations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

32.  Also, winning damages under the CLRA requires additional showings not required under equitable causes of action. For example, the CLRA prohibits only particular categories of deceptive conduct. By contrast, equitable causes of action such as unjust enrichment broadly prohibit "unfair" conduct.

33.  By the same token, Plaintiff's common law claims require additional showings, compared to his unjust enrichment claim.  For example, to prevail on his breach of warranty claim, Plaintiff needs to show that the statements he challenges constitute a warranty and that the warranty was part of the basis of the bargain. No such showings are required under an unjust enrichment theory. And unjust enrichment exists in part because contractual claims are often more difficult to establish. In this way, Plaintiff's unjust enrichment claim is more certain than his legal claims.

CLASS ACTION COMPLAINT

34.     Finally, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all consumers nationwide who purchased the Products within four years prior to the filing of this Complaint.

36.     Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

37.     Plaintiff reserves the right to alter the Class definition, and to amend this Complaint to add additional Subclasses, as necessary to the full extent permitted by applicable law.

38.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

39.     **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed throughout the nation.

40.     **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

   a.   Whether the marketing, advertising, packaging, labeling, and other promotional materials for Defendant's Products is misleading and deceptive;

b. Whether a reasonable consumer would understand Defendant's :All-Natural" claim to indicate that the Products did not contain synthetic malic acid, and reasonably relied upon that representation;

c. Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

d. Whether Defendant breached an express warranty;

e. the proper amount of damages;

f. the proper scope of injunctive relief; and

g. the proper amount of attorneys' fees.

41. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

42. In short, these common questions of fact and law predominate over questions that affect only individual Class members.

43. **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

44. Specifically, all Class members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class members.

45. There are no defenses available to Defendant that are unique to the named Plaintiff.

CLASS ACTION COMPLAINT

46. **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

47. Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

48. **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

a. the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

b. the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

c. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

d. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

-9-

CLASS ACTION COMPLAINT

68.    Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

69.    Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law. Defendant continues to mislabel the Products in the manner described herein and sell them to the consuming public. Defendant would like to purchase the Products and other products sold by Defendant in the future, but cannot currently do so because he cannot rely on the Products' labelling, given the deceptions regarding natural ingredients found there. An injunction prohibiting future deceptive labelling is therefore warranted and would provide Plaintiff and the Class relief.

70.    The Washington Supreme Court treats consumers bringing claims under the Washington Consumer Protection Act as "private attorneys general" who "may seek injunctive relief even when the injunction would not directly affect their own interests." *Scott v. Congular Wireless*, 160 Wash. 2d 843, 161 P.3d 1000, 1006 (2007). Such "public injunctive relief" is an integral part of enforcement of Washington consumer protection law.

71.    **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

72.    Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

**COUNT 1**
**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT ("WCPA")**
**RCW Chapter 19.86**

73.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative on his own behalf and on behalf of the Class.

74. The WCPA provides consumers with a comprehensive procedure for redressing Defendants' unfair or deceptive business practices.

75. Plaintiff is a "consumer" within the meaning of the WCPA.

76. RCW 19.86.090 provides a private right of action to any person injured in his property by an "unfair or deceptive act or practice."

77. Defendant's acts and omissions as alleged herein violate the Washington CPA because they: (1) are unfair or deceptive acts or practices; (2) are committed in the course of Defendants' business; (3) have a pervasive public interest impact and have the potential to deceive a substantial portion of the public; and (4) have caused injury to Plaintiffs in their business and/or property and the members of the Class..

78. Defendant's ongoing failure to provide material facts about its Products on its labels violates the WCPA in at least these respects:

   a. Defendant's acts and practices constitute misrepresentations that its Products have characteristics, benefits, or uses which they do not have;

   b. Defendant misrepresented that its Products are of a particular standard, quality, and/or grade, when they are of another;

   c. Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

   d. Defendant's acts and practices fail to represent that transactions involving its Products involve actions that are prohibited by law, particularly the use of misleading nutritional labelling; and

   e. Defendant's acts and practices constitute representations that its Products have been supplied in accordance with previous representations when they were not.

79. As a result of Defendants' deceptive acts and practices as alleged herein. Plaintiffs and the members of the Class paid for unwanted goods, or paid an unwanted premium for those goods. Defendants' actions and inactions as alleged herein are the proximate cause of injury to Plaintiffs and the Class in an amount to be proven at trial.

CLASS ACTION COMPLAINT

80.     Pursuant to RCW 19.86.090, Plaintiffs seek damages on behalf of themselves and each Class member against all Defendants for Plaintiffs' actual damages sustained as a result of Defendants' actions and inactions alleged herein, in an amount to be determined at trial, as well as the costs of this suit and reasonable attorneys' fees.

81.     By reason of the foregoing, Plaintiff and the Class have been irreparably harmed, entitling them to injunctive relief.

82.     Plaintiff is entitled to enjoin publication of misleading and deceptive nutritional labels on Defendant's Products and to recover reasonable attorneys' fees and costs.

## COUNT 2
## UNJUST ENRICHMENT UNDER WASHINGTON LAW

83.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative in the event that Plaintiff has an inadequate remedy at law on his own behalf and on behalf of the Class.

84.     Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers by misrepresenting that the Products were all-natural.

85.     Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

86.     Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

87.     Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

88.     Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

89.     Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed

appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

90.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

**COUNT 3**
**BREACH OF EXPRESS WARRANTY UNDER WASHINGTON LAW**

91.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

92.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, warranted that the Products contained only natural ingredients.

93.    Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and the Class and regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Class, creating a warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

94.    The Products do not conform to the implied warranty that the Products contain only natural ingredients.

95.    As a direct and proximate cause of Defendant's breach of implied warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' use of synthetic ingredients; (b) they paid a price premium based on Defendant's warranties; and (c) the Products do not have the characteristics, uses, or benefits that were promised.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief against Defendant:

a.    Certifying the Class;

b.    Declaring that Defendant violated the WCPA and/or was unjustly enriched and/or breached a warranty;

-13-
CLASS ACTION COMPLAINT

c.  Ordering an award of actual, compensatory, or statutory damages, in an amount to be proven at trial;

d.  Ordering an awarding of injunctive relief as permitted by law, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

e.  Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff;

f.  Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g.  Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED ON ANY COUNTS SO TRIABLE.

Dated this 24<u>th</u> day of March, 2026.

Respectfully submitted,

<u>/s/ *Carl J. Marquardt*</u>
Carl J. Marquardt, WSBA #23257
Law Office of Carl J. Marquardt, PLLC
1126 34th Ave., Suite 311
Seattle, WA  98122-5137
Telephone:  206-388-4498
e-mail:  carl@cjmpllc.com

<u>/s/ *Charles C. Weller*</u>
Charles C. Weller (*pro hac vice* forthcoming)
CHARLES C. WELLER APC
11412 Corley Court
San Diego, CA 92126
(858) 414-7465
legal@cweller.com

Attorneys for Plaintiff

-14-

CLASS ACTION COMPLAINT